## *IN THE SUPREME COURT, STATE OF WYOMING*

## 2015 WY 114

*April Term, A.D. 2015*

<u>**August 19, 2015**</u>

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.                                                              D-15-0005

FRANK J. JONES, WSB No. 4-1050,

Respondent.

## ORDER OF PUBLIC CENSURE

[¶1]    **This matter** came before the Court upon a "Report and Recommendation for Public Censure," filed herein July 27, 2015, by the Board of Professional Responsibility for the Wyoming State Bar, pursuant to Section 16 of the Disciplinary Code for the Wyoming State Bar (stipulated discipline).  Preliminarily, this Court agrees with the Board's conclusion that this matter should be governed by the Disciplinary Code for the Wyoming State Bar, and not the newer Wyoming Rules of Disciplinary Procedure.  *See* Rule 26(f) of the Wyoming Rules of Disciplinary Procedure ("These rules shall become effective July 1, 2015, and any discipline or disability investigation pending on that date shall proceed under these rules.  Any matter then pending with respect to which a formal charge has been filed shall be concluded under the procedure existing prior to the effective date of these rules.").  The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court (with one exception), and that Respondent, Frank J. Jones, should be publicly censured for his conduct.  It is, therefore,

[¶2]    **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Public Censure, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted

by this Court, with one exception. With respect to Recommendation 3 on pages 18 and 19 of the Report and Recommendation, this Court adopts only the following: "Respondent shall, before undertaking any new matters in the future, comply fully with Rule 1.7. . . ." The Court does not adopt the remainder of that recommendation; and it is further

[¶3] **ADJUDGED AND ORDERED** that Frank J. Jones is hereby publicly censured for his conduct, which is described in the Report and Recommendation for Public Censure. This public censure shall include issuance of a press release consistent with the one set out in the Report and Recommendation for Public Censure; and it is further

[¶4] **ORDERED** that, pursuant to Section 26 of the Disciplinary Code for the Wyoming State Bar, Mr. Jones shall reimburse the Wyoming State Bar the amount of $50.00, representing the costs incurred in handling this matter, as well as pay the administrative fee of $500.00. Mr. Jones shall pay the total amount of $550.00 to the Wyoming State Bar on or before October 19, 2015; and it is further

[¶5] **ORDERED** that the Clerk of this Court shall docket this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, as a matter coming regularly before this Court as a public record; and it is further

[¶6] **ORDERED** that, pursuant to Section 4(a)(iv) of the Disciplinary Code for the Wyoming State Bar, this Order of Public Censure, along with the incorporated Report and Recommendation for Public Censure, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶7] **ORDERED** that the Clerk of this Court cause a copy of this Order of Public Censure to be served upon Respondent, Frank J. Jones.

[¶8] **DATED** this 19th day of August, 2015.

BY THE COURT:

/s/

**E. JAMES BURKE**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

JUL 2 7 2015

CAROL THOMPSON, CLERK
by DEPUTY

| | |
|---|---|
| *In the matter of* | ) |
| *Frank J. Jones* | ) |
| *WSB No. 4-1050* | ) *Docket No. WSB 2014-177* |
| | ) |
| *Respondent.* | ) **D-15-0005** |

## REPORT AND RECOMMENDATION FOR PUBLIC CENSURE

The Board of Professional Responsibility makes the following Report and Recommendation, with its findings of fact and recommendation to the Supreme Court of Wyoming:

### FINDINGS OF FACT

1. Respondent is an attorney licensed to practice in Wyoming and maintains a practice in Wheatland.

2. During 2007-2008, Respondent represented Guernsey, Wyoming residents Roger A. Ganfield and Freda A Sudrla in connection with a boundary dispute they had with their neighbor to the north, David S. Cole.

3. Ganfield and Sudrla are retired University of Nebraska faculty members. They reside on property they purchased for retirement in Guernsey, Wyoming, located on the North Platte River that includes a residence and several outbuildings.

4. The property Cole occupied was separated from the Ganfield/Sudrla property in part by an abandoned railroad right of way (berm with no tracks). Outbuildings owned and used by Ganfield/Sudrla were located on portions of the abandoned railroad right of way. Cole had asserted adverse claims to that abandoned railroad right of way.

5. In about May 2007, Ganfield and Sudrla met with Respondent at his office in Wheatland, Wyoming, seeking to engage a lawyer to represent them in their boundary dispute with Cole. Ganfield and Sudrla described the situation to Respondent. Respondent told Ganfield and Sudrla that he was familiar with David Cole, did not think Cole would want to incur the expense of a lawsuit, and suggested that he would visit with Cole to see if the matter could be resolved without a lawsuit. Ganfield and Sudrla asked Respondent about fee arrangements, but Respondent said he wanted to visit with Cole to see if the matter could be resolved without litigation, before discussing fee arrangements.

6. Respondent had a substantial pre-existing relationship with Cole.

7. Ganfield and Sudrla complain that Jones did not disclose to them that David Cole was a client or former client. They complain that they were seeking to hire a lawyer who could sue Cole because they believed they had already exhausted efforts at negotiation, and that Respondent led them to believe he would represent them against Cole in litigation if necessary. Due to the passage of time,

2

Respondent does not recall the details of his initial meeting with Ganfield and Sudrla, however, he thinks it is likely he told them Cole or his business interests had been a client of his, and, he does not believe that he would have led Complainants to believe that Respondent could represent them in litigation adversely against Cole.

8.     Before he undertook to represent Ganfield and Sudrla, Respondent did not communicate to them the full nature and extent of his relationship with David Cole and his family and business interests.

9.     Respondent did not fully explain to Ganfield and Sudrla the material limitations to Respondent's ability to fully represent Ganfield and Sudrla arising out of Respondent's relationship with David Cole.

10.     Respondent did not obtain from Ganfield and Sudrla any written informed decision signed by them to Respondent's representation notwithstanding the conflict of interest arising from Respondent's attorney-client relationship with Cole.

11.     After his initial meeting with Ganfield and Sudrla Respondent met with Cole.  Cole reportedly told Respondent that if Cole had an easement from the Town of Guernsey for an access route, then Cole would be more willing to trade disputed properties with Ganfield and Sudrla.  Respondent searched records for an

3

easement in Cole's favor. He also communicated and met with Town representatives in efforts to resolve the issues.

12. Respondent never discussed with Ganfield and Sudrla any proposed simultaneous representation of Cole by Respondent, nor did Respondent ever propose to act as an intermediary in the negotiations between the adverse parties under then-applicable Rule 2.2(a). Respondent did not obtain informed written consent (decision) of Ganfield and Sudrla, in a writing signed by them, to his simultaneous representation of Cole or to Respondent acting as an intermediary.

13. By a letter to Jones dated April 30, 2008, Ganfield and Sudrla terminated Respondent's representation of them. They stated that they had seen no evidence of progress in resolving their boundary dispute with Cole and had been unable to communicate with Respondent after contacting his office many times in the previous ten (10) months. Respondent denies that he did not respond to Complainants' telephone calls.

14. About six weeks later, Respondent wrote a letter dated June 11, 2008 addressed jointly to both Cole and Ganfield. In this letter Respondent described the existing dispute and stated that an action would have to be filed by Ganfield and Sudrla against Cole to quiet title in Ganfield. He stated that "In my endeavors" to resolve the matter without litigation, "I have created a severe conflict of interest for myself . . . I cannot represent the parties in any of this

4

litigation as I have put myself in a position of being a "negotiator" rather than a "litigator" in the issues."

15. The Rules of Disciplinary Procedure became effective July 1, 2015 and apply to disciplinary investigations "pending" on that date. Rule 26(f), Wyoming Rules of Disciplinary Procedure. However, the Disciplinary Code remains applicable in cases where formal charges were filed before July 1, 2015.

16. Special Bar Counsel and Respondent reached agreement during April 2015 that Respondent would stipulate to public censure discipline. They proceeded to negotiate language of the stipulated motion and supporting affidavit, resulting in Respondent's June 18, 2015 execution of the Affidavit of Factual Basis and Agreement to Discipline, and the filing of their Stipulated Motion on June 22, 2015. The parties contemplated that their motion would be considered by the Board and the Wyoming Supreme Court under the procedures of Disciplinary Code Section 21(c). See Paragraph 22 of Respondent's Affidavit.

17. The Board concludes that Special Bar Counsel's disciplinary investigation in this matter was concluded on or before June 18, 2015, and was no longer pending as of July 1, 2015. If the parties had not earlier arrived at stipulated resolution, any formal charge necessary to this matter would have been filed before July 1, 2015, and would have proceeded under the previous Disciplinary Code. Therefore, in accordance with Rule 26(f) of the Rules of

5

Disciplinary Procedure, and, the parties' stipulation, the Board concludes that the Parties' Stipulated Motion is subject to Disciplinary Code Section 21 and that the new Rules of Disciplinary Procedure do not apply.

18. Complainants were timely served with copies of the stipulated motion and Respondent's affidavit. They were afforded the opportunity to submit, and did submit, written comments. Complainants do not object to the stipulated public censure resolution.

19. Respondent was served with as-filed copies of the Stipulated Motion, Affidavit, and Special Bar Counsel's Addendum to the Stipulated Motion. Respondent agreed to submission of the matter to the Board on the papers filed. Respondent did not ask to participate in the Board's conference call to consider the stipulated motion.

20. Under Rule 1.7(a)(2), Wyoming Rules of Professional Conduct, "Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Under Rule 1.7(b), a lawyer may proceed to represent a client notwithstanding the existence of a concurrent conflict of interest if four specified criteria are met,

6

including that the client "(4) gives informed consent, confirmed in a writing signed by the client."

21. Under Rule 1.4(a)(1), Wyoming Rules of Professional Conduct, "a lawyer shall promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these rules."

22. Before undertaking representation of Ganfield and Sudrla in the boundary dispute adverse to Cole, Respondent therefore had duties: (a) to communicate to Ganfield and Sudrla as prospective clients a description of the nature and extent of Respondent's pre-existing relationships with Cole; (b) to inform Ganfield and Sudrla fully regarding material limitations on his ability to represent Ganfield and Sudrla arising from his relationship with Cole; and (c) to obtain informed written consent from Ganfield and Sudrla in a writing signed by them.

23. Rule 2.2 of the Wyoming Rules of Professional Conduct has since been rescinded, however, under Rule 2.2 as it applied at the time, if Respondent intended to represent the adverse parties in the boundary dispute simultaneously, in the role of an intermediary, Respondent was required to first consult "separately with each client concerning the implications of the common representation," and

7

to first obtain "each client's informed decision to the common representation, in writing signed by the client."

24.     Respondent violated Rules 1.4, 1.7 and 2.2 by: (a) failing to fully inform Ganfield and Sudrla regarding the facts associated with conflicts of interest arising from his relationships with Cole and Weaver; (b) failing to fully advise Ganfield and Sudrla of the material limitations those conflicts of interest would pose to Respondent's representation of them; and (c) failing to obtain informed written decisions in a writing or writings signed by Ganfield and Sudrla to Respondent's conflicts of interest as to Cole, to Respondent's simultaneous representation of Cole, or, to Respondent's undertaking to represent the adverse parties in a role as intermediary.

25.     The pleadings filed herein also show that Respondent's son, and his step-son-in-law each represented Cole (the adverse party to Ganfield and Sudrla) at different times. The Board concludes there exists an adequate factual basis for the Board to also approve the parties' stipulation that Respondent be ordered to make reasonable inquiry in the future when screening new matters to identify and clear potential conflicts associated with adverse representation of parties among lawyers closely related by blood or marriage.

26.     Pursuant to the parties' stipulation, the further charges raised by Complainants will be dismissed upon the Court's approval of this Report and

Recommendation, including their claims that: (a) Respondent violated Rule 1.3 by failing to act with reasonable diligence and promptness; (b) Respondent violated Rule 1.4(a)(3) by failing to keep his clients reasonably informed about the status of the matter; (c) Respondent violated Rule 1.4(a)(4) by failing to return Complainants' phone calls or promptly comply with their reasonable requests for information; and (d) Respondent violated Rule 1.6 (safeguard of client confidential information) and Rule 1.9(a) (duties to former clients) by appearing on the disputed property in a 2013 site visit.

## ABA SANCTION GUIDELINES

27. In determining an appropriate sanction, the Board is guided by the American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") which state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession."

28. ABA **Standard 3.0** lists four factors to be considered in imposing a sanction after a finding of lawyer misconduct:

(a) the duty violated;

(b) the lawyer's mental state;

9

(c) the potential or actual injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

29.     Respondent's misconduct falls under the general category of ABA Standards 4.0 "Violations of Duties Owed to Clients." In describing the theoretical framework of the Standards the ABA Committee states that "the standards assume that the most important ethical duties are those obligations which a lawyer owes to clients." Accordingly, the ABA Standards generally call for higher sanctions for violations of such duties.

30.     Respondent's misconduct also falls under two sub-categories of ABA Standards 4.0. ABA Standards 4.3 ("Failure to Avoid Conflicts of Interest") applies most directly to all of the conduct at issue. Also potentially applicable to Respondent's conduct in failing to fully inform his clients is ABA Standards 4.6 ("Lack of Candor"). These standards state:

4.3 Failure to Avoid Conflicts of Interest

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:

> 4.31 Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):

> (a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or

10

(b) simultaneously represents clients that the lawyer knows have adverse interests with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or

(c) represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.

4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.33 Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

4.34 Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.

4.6 Lack of Candor

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases where the lawyer engages in fraud, deceit, or misrepresentation directed toward a client:

11

4.61  Disbarment is generally appropriate when a lawyer knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client.

4.62  Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to a client.

4.63  Reprimand [i.e., "public censure" under Section 4(a)(iii) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

4.64  Admonition [i.e., "private reprimand" under Section 4(b) of Wyoming's Disciplinary Code] is generally appropriate when a lawyer engages in an isolated instance negligence in failing to provide a client with accurate or complete information, and causes little or no actual or potential injury to the client.

31.  The preamble to the ABA Standards includes the following discussion regarding mental state:

> The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result.  The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

32. Given that Respondent has acknowledged rules violations, the appropriate sanction under the Guidelines therefore turns on whether Respondent to have acted "knowingly" or "negligently" as so defined. Respondent acknowledges that he acted negligently with respect to the rules violations to which he has stipulated.

33. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

34. Respondent concedes that Complainants were injured within the meaning of the Standards, including by a delay and because of the burden to them of changing counsel.

35. ABA **Standard 9.0**, entitled "Aggravation and Mitigation," provides as follows:

## 9.1 *Generally*

After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

## 9.2 *Aggravation*

9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.

9.22 *Factors which may be considered in aggravation.* Aggravating factors include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of the victim;

(i) substantial experience in the practice of law;

(j) indifference in making restitution; and

(k) illegal conduct, including that involving the use of controlled substances.

## 9.3 Mitigation

9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.

9.32 *Factors which may be considered in mitigation.* Mitigating factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

15

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

9.4    *Factors Which Are Neither Aggravating nor Mitigating*

The following factors should not be considered as either aggravating nor mitigating:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction; and

(f) failure of injured client to complain.

36.    The following mitigating factor is present: absence of a dishonest or selfish motive.

37.    There has been no delay in the conduct of these proceedings sufficient to consider delay as additional mitigating factor.

38.    The following aggravating factors are present: (1) vulnerability of victim; (2) prior disciplinary offenses; and (3) substantial experience in the practice of law.

16

39. While Respondent took the position that his prior disciplinary history should not be considered as either a mitigating or aggravating factor, the Board disagrees. Respondent was originally admitted to the Wyoming State Bar in 1968. He was disbarred in 1995, was later held in contempt of court for engaging in the unauthorized practice of law while disbarred, and was reinstated to the practice of law in 2004. *Reinstatement of Jones*, 82 P.3d 1239 (Wyo. 2004). Following his 2004 reinstatement, and prior to the date of this Formal Charge, Respondent has been in good standing.

40. In the event this report and recommendation is approved by the Court and an order of public censure is issued, Respondent has consented to the following press release:

> By order dated _____, the Wyoming Supreme Court publicly censured Frank J. Jones. The censure arose from a complaint that was filed against Mr. Jones by former clients Roger Ganfield and Freda Sudrla who had engaged Jones to represent them in a boundary dispute with a neighbor. Upon investigation, it appeared that Mr. Jones had failed to fully inform his clients about Jones' longstanding relationship with the neighbor/adverse party, that Jones had failed to fully advise Ganfield about the material limitations his relationship with the neighbor might impose on Mr. Jones' ability to represent Ganfield, and, that Jones had failed to obtain Ganfield's fully informed to consent in a writing to those conflicts of interest. Then during work on the matter, Jones undertook work to advance interests of the neighbor/adverse party without the informed consent of Ganfield and Sudrla.

Before the disciplinary investigation proceeded to any formal charge before the Board of Professional Responsibility, Mr. Jones agreed to stipulate to a public censure. A stipulated motion to that effect was approved by the Board of Professional Responsibility, after which a report and recommendation for such discipline was submitted by the Board to the Wyoming Supreme Court. The Court approved the report and recommendation and ordered the public censure on _____, 2015. Mr. Jones was ordered to fully inform future prospective clients of the facts associated with any client conflicts of interest, to fully advise the prospective clients of the limitations on his future representation associated with conflicts of interest and to obtain fully informed consent in writing signed by the clients. Mr. Jones was also ordered to pay an administrative fee of $500 and costs of $50 to the Wyoming State Bar.

## RECOMMENDATION

In consideration of the foregoing, the Board recommends:

1.      That Respondent shall comply with all obligations of the Wyoming Rules of Professional Conduct in the future; and

2.      That Respondent shall complete the Conflicts of Interest section of the Wyoming State Bar self-audit checklist, and, within thirty days of the Court's entry of an order of public censure, Respondent shall report in writing to Bar Counsel, (a) his findings resulting from the self-audit of his conflict of interest procedures, and (b) all steps he has taken to improve those procedures; and

3.      Respondent shall, before undertaking any new matters in the future, comply fully with Rule 1.7, including by making reasonable inquiry to determine

18

whether or not his son, son-in-law (or any other lawyer in the community who is a family member by blood or marriage) is concurrently representing, or has previously represented, an adverse party in the same or a substantially related matter.

4.     Respondent shall, before undertaking any new matters in the future, comply fully with Rule 1.7, including by fully disclosing to any prospective client the existence of any concurrent or previous attorney-client relationship between Respondent and any party who is adverse to the prospective client in the proposed matter.

5.     Respondent be ordered to pay an administrative fee of $500 and $50 in costs to the Wyoming State Bar.

DATED this 24th day of July, 2015.

Jenifer E. Scoggin, Chair
Board of Professional Responsibility
Wyoming State Bar

19